IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **GUILLERMO MURILLO MOLINA** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-cv-00017 |
| | § | |
| **COLLIN COUNTY, TEXAS and** | § | |
| **ROBERT LANGWELL** | § | |

## DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ERNEST BURWELL

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **COLLIN COUNTY, TEXAS** ("Collin County") and **ROBERT LANGWELL** ("Officer Langwell"), Defendants in the above-styled cause, and files this their MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ERNEST BURWELL, and in support would show unto the Court:

### I.
### BACKGROUND

1. This is an action brought by Plaintiff Guillermo Murillo Molina ("Molina") pursuant to 42 U.S.C. § 1983 and the Texas Tort Claims Act, arising out of a dog bite Molina sustained from a Collin County police K-9 unit on the night of January 6, 2015, in Prosper, Texas. Molina was being investigated by police at the time for matching the description of a suspected automobile burglar. The facts regarding this incident are set forth more fully in the Motions for Summary Judgment which Defendants have filed here, Doc. 30 and Doc. 31.

2. Molina has retained purported dog bite expert Ernest Burwell ("Burwell") to render opinions on the above-described police activity of January 6, 2015. A copy of his report dated July 5, 2017 is attached in its entirety hereto as Exhibit No. 1. Burwell opines in his expert report that Officer Langwell applied unreasonable force that night in allowing his K-9 unit to bite Molina, in

what Deputy Langwell should have known was, at most, a non-violent, misdemeanor offense, most likely committed by a juvenile. [*See* Burwell Expert Report at 6-8]. Burwell's report also purports to answer a question of law in concluding that Collin County's police canine policy fails to meet important legal standards set forth by the United States Supreme Court. [*See* Burwell Expert Report at 7, 20, 22, 30-31].

3. Burwell's "expert" opinions essentially pick those facts which support his beliefs yet ignore highly relevant factors that were present on the night of January 6, 2015, including Deputy Langwell's Langwell's knowledge that a car burglary had been committed, Deputy Langwell's knowledge that the suspect was carrying a backpack of unknown contents [possibly weapons], and Deputy Langwell's lack of knowledge that Molina was an unarmed juvenile. Equally, if not more, problematic is that Burwell sweepingly opines about "standards" concerning use of canines which are not supported - - if not directly contradicted - - by controlling case law. Moreover, Burwell reaches his opinions without providing a clear analysis or applying objective metrics or scientific method – he simply imagines an ideal and fanciful law enforcement scenario that ignores the constructs of reality. Burwell accordingly fails to qualify as an expert under the *Daubert* standard, and his testimony and report should be struck in its entirety.

## II.
## APPLICABLE STANDARDS

4. As the Supreme Court has recognized, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty of evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The Supreme Court is clear that judges must undertake this gate-keeping obligation with diligence, even though

it "will sometimes ask judges to make subtle and sophisticated determinations about scientific methodology and its relation to the conclusions an expert witness seeks to offer." *General Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997) (Breyer, J., concurring). The Court's gatekeeping function applies to all expert testimony, whether based on scientific, technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

5. "[W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." *Kumho Tire,* 526 U.S. at 149. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge. In order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 597; see also *Kumho Tire*, 526 U.S. at 141; *Joiner,* 522 U.S. at 142; FED. R. EVID. 702. More specifically, in *Daubert*, the Court held an expert's opinion must be grounded in scientific method, must constitute more than a mere subjective belief, and must be relevant to and fit the facts of the case in question. 509 U.S. at 590-591. Courts since *Daubert* have subjected expert testimony to strict scrutiny, making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *See e.g., Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999).

6. When an expert relies on data that does not have sufficient probative force and reliability such that a reasonable expert could rely upon it, the expert's opinions must be excluded. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994) (quoting *In re Agent Orange*

*Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D. N.Y. 1985)). The Court must examine the data and testing upon which the opinion is allegedly based to determine its reliability. *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005); *see also Smelser v. Norfolk S. Ry Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

7. Even if the expert is qualified to render an opinion regarding a particular subject, the opinion must nevertheless be based on a reliable foundation, including accurate and relevant facts, in order to be admissible. While *Daubert's* focus is primarily on principles and methodology, "conclusions and methodology are not entirely distinct from one another." *Joiner*, 522 U.S. at 146; *Kumho Tire*, 526 U.S. at 157 (district courts must "scrutinize" whether the principles and methods used by the expert have properly been applied to the facts of the case). "The district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3rd Cir. 1999). If the court concludes that there is simply too great an "analytical gap" between the facts and the expert's conclusion from those facts, the opinion should be excluded. *Joiner*, 522 U.S. at 146; *see also Moore*, 151 F.3d at 276 ("A district court, while acting as a gatekeeper for expert evidence, must evaluate whether there is an adequate 'fit' between the data and the opinion proffered"). In short: an expert's bare opinion will not suffice.

### III.
### BURWELL FAILS TO TAKE INTO ACCOUNT
### HIGHLY RELEVANT FACTORS IN FORMING HIS OPINIONS

8. Burwell's expert report erroneously assumes that Deputy Langwell had an omniscient level of knowledge on the night of January 6, 2015. According to Burwell's expert report, it was reasonable to expect Deputy Langwell, despite the night setting and confirmed reports of burglaries perpetrated by a hooded suspect carrying a backpack of unknown contents,

- to know that no criminal offense greater than a misdemeanor had been committed [*See* Burwell Expert Report at 7];

- to know that he was dealing with a juvenile [*See* Burwell Expert Report at 8];

- to know that the suspect had no weapons [*See* Burwell Expert Report at 8];

- to know that his K-9 unit's behavior change signaled no threat from the suspect [*See* Burwell Expert Report at 15]; and

- to recall his K-9 unit prior to even having visual confirmation of the suspect [*See* Burwell Expert Report at 14-16].

9. Burwell supplies no basis for why Officer Langwell should have reasonably attained this level of omniscience on the night in question, other than vaguely stating that "all the facts" of the vehicle burglaries provided the appropriate indications. [*See* Burwell Expert Report at 8]. All the facts known to Officer Langwell that night, however, were that he was dispatched to track two hooded individuals, who were reported to be carrying backpacks of unknown contents, and who was suspected of committing burglaries in the area.

10. Burwell's entire analysis depends on the veracity of his faulty assumptions regarding Officer Langwell's knowledge. Burwell has failed, however, to critically address the relevant factors that existed on January 6, 2015 – most notably the night setting, limited visibility, and the confirmed reports of burglary perpetrated by a suspect carrying a backpack of unknown contents – which categorically refute the omniscience presumed in his expert report:

- the confirmed reports of burglary demonstrated that Officer Langwell was dealing with a criminal, who <u>at minimum</u>, had committed a misdemeanor offense;

- the night setting and limited visibility facilitated the criminal's ability to surprise and ambush a police officer, requiring extra caution and heightened alert from Officer Langwell;

- the unknown contents of the suspect's backpack could have included a weapon, and Officer Langwell had no reason to assume otherwise;

- a change in the tracking behavior of Officer Langwell's K-9 unit signaled only that the suspect was near, not that the suspect posed no threat.

Deputy Langwell's inability to see the suspect, on account of the limited visibility and night setting, actually provides more justification for not immediately recalling the K-9 unit, contrary to the conclusion drawn by Burwell in his report.  Without visual assessment of the suspect, Deputy Langwell had no way of knowing whether the suspect posed a threat; Burwell's contention that Deputy Langwell should have immediately recalled his K-9 unit is nothing short of nonsense. This especially true in light of the Plaintiff's recent deposition testimony wherein he described that it only took Deputy Langwell 15 seconds to remove Elo from the bite once Elo and Plaintiff came to rest [according to Plaintiff's version of events].  Burwell's assumptions are thus faulty at their base, and they cannot reasonably support the sweeping conclusions he draws from them in his report.

11. If an expert fails to ground his opinion in the principles and methodology of the relevant discipline, the opinion is "inadmissible no matter how imposing [the] credentials" of the proffered expert.  *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318-19 (7th Cir. 1996).  In determining whether an expert's methods are reliable, the courts are not required "to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. Burwell's testimony and expert report clearly fall under the Supreme Court's ruling in *Joiner* and should be excluded accordingly.

### IV.
### BECAUSE BURWELL FAILED TO USE PROPER METHODS TO REACH HIS CONCLUSIONS, HIS TESTIMONY MUST BE STRICKEN

12. As set forth above, Burwell's entire analysis rests on erroneous assumptions about Deputy Langwell's level of knowledge that are refuted on their face by the facts actually known to Deputy Langwell on the night of the incident in question.  For this reason alone, Burwell's testimony and his expert report should be struck in its entirety.  *See Joiner*, 522 U.S. at 146.

13. But Burwell further purports to answer a question of law by contending that the Collin County policy on use of K-9 units falls well short of the three-factor test articulated by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), for determining the reasonableness of force. [*See* Burwell Expert Report at 7, 20, 22, 30-31]. Burwell vaguely compares Collin County's police canine policy to other (hand-picked and irrelevant) police canine policies across the country before reaching the conclusion that Collin County's is the "weakest" he has seen in 30 years. [*See* Burwell Expert Report at 30]. Burwell sets forth additional, idealized parameters that the Collin County policy "should have" but fails to identify how the Collin County policy is unconstitutional or otherwise invalid without them. Burwell's bid to step into the Court's shoes and answer a critical question of law on its behalf should be firmly rejected; his testimony and expert report should be struck in its entirety.

14. Moreover, Burwell has apparently made a habit of having his testimony struck by federal courts over the course of his career as a plaintiff's expert in police misconduct cases. Time and time again, federal courts have struck Burwell's testimony on the basis that his opinions offer no substantive basis or support, as here. *See, e.g., May v. San Mateo Cnty.*, No. 16-cv-00252-LB, 2017 U.S. Dist. LEXIS 83425, at *22-23 (N.D. Cal. May 26, 2017) ("Mr. Burwell's expertise on police-canine practices does not entitle him to tell the jury . . . that a police-dog bite is the greatest level of non-lethal force. . . . Mr. Burwell has testified that he would maintain this opinion even if his cited sources did not prove to support it."); *Woodward v. City of Gallatin*, No. 3:10-1060, 2013 U.S. Dist. LEXIS 164346, at *15-18 (M.D. Tenn. Nov. 19, 2013) ("[T]he Court finds [Mr. Burwell's] testimony insufficient as a matter of law. . . . [H]e basically opines that the officers' actions in this case were indicative of a lack of training, without identifying any deficiencies in the . . . training materials."); *Conely v. City of Lakewood,* No. 3:11-cv-6064, 2012 U.S. Dist. LEXIS 175731, at *19 (W.D. Wash. Dec. 11, 2012) ("Mr. Burwell's opinion does not meet the standard of

evidentiary reliability in this case. . . . [his] opinion appears to be legal argument rather than expert analysis."); *Ontiveros v. City of Rosenberg*, No. 4:06-cv-3293, 2008 U.S. Dist. LEXIS 112564, at *30, n.8 (S.D. Tex. Jan. 31, 2008) ("Even if the Court were to find Mr. Burwell's testimony admissible under *Daubert* . . . [t]he Court does not agree with Mr. Burwell that finding Officer Logan's actions reasonable means that an officer is 'always free to shoot unarmed suspects.'").

15. The case before the Court here is no different than the other numerous cases where federal courts have rightly excluded Burwell's testimony and opinions for his demonstrated lack of a supported expert analysis. The result here should be no different, and Burwell's testimony and expert report should be excluded.

## V.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendants **COLLIN COUNTY, TEXAS,** and **ROBERT LANGWELL** pray that the Court (1) grant this motion; (2) strike and exclude in its entirety the expert report and testimony of Ernest Burwell; and (3) grant any such other and further relief, at law or in equity, to which Defendants may show themselves justly entitled.

Respectfully submitted,

By: /s/ Robert J. Davis
**ROBERT J. DAVIS**
State Bar No. 05543500
**MATTHEWS, SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)

**ATTORNEY FOR DEFENDANTS**
**COLLIN COUNTY, TEXAS,** and
**ROBERT LANGWELL**

**CERTIFICATE OF CONFERENCE**

 I hereby certify that on August 21, 2017, I conferred with Plaintiff's counsel Scott Palmer and he is opposed to the relief requested in this motion.  It is therefore submitted to the Court for determination.

           /s/ Robert J. Davis
           **ROBERT J. DAVIS**

**CERTIFICATE OF SERVICE**

 I hereby certify that on August 21, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Scott Palmer and J.R. Fletcher.

           /s/ Robert J. Davis
           **ROBERT J. DAVIS**