# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GUILLERMO MURILLO MOLINA | § § | |
| v. | § § | Civil Action No. 4:17-CV-00017 |
| | § | Judge Mazzant |
| COLLIN COUNTY, TEXAS; ROBERT LANGWELL | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Deputy Langwell's Motion for Summary Judgment (Dkt. #30). After reviewing the relevant pleadings and motion, the Court finds the motion should be denied in part and granted in part.

## BACKGROUND

This is an excessive force case arising from a dog bite Plaintiff Guillermo Murillo Molina ("Molina") sustained from a Collin County police canine under the control of Deputy Robert Langwell ("Deputy Langwell"). As a result of the incident, Plaintiff alleges Defendants Collin County and Deputy Langwell violated 42 U.S.C. § 1983, and Defendant Collin County violated the Texas Tort Claims Act.

On January 6, 2015, at approximately 2:30 a.m., Molina and an alleged accomplice were walking in a neighborhood when a police officer, Officer Juan Flores ("Officer Flores"), flashed his lights. Upon seeing the officer, Molina and the accomplice ran. While the accomplice continued to run, Molina hid under bushes outside a nearby house. As a result of the two individuals' running, Officer Flores called for backup. Subsequently, Deputy Langwell and his police canine Elo arrived on the scene. Upon arriving, Officer Flores, Deputy Langwell, and Elo started searching for Molina. As they approached Molina's hiding spot the bite apprehension

occurred. It is at this point the stories deviate. Deputy Langwell contends Elo bit Molina as he lay motionless, facedown, and beneath the bushes. Conversely, Molina claims after he heard the dog nearby he decided to surrender and started to stand up and climb over the bush he used to hide himself. Molina alleges that as he swung his leg over the bush Elo attacked him, biting him and thrashing about with Molina's leg in his mouth. In the course of Elo's biting of Molina, the two tumbled down the incline of the lawn. Molina asserts that although Deputy Langwell pulled Elo's leash, he never issued any commands to Elo or made any other efforts to remove Elo from Molina's leg. According to Molina, Elo maintained his bite for approximately fifteen to thirty seconds before finally releasing Molina.

As a result of the underlying facts, on January 6, 2017, Molina initiated this suit against Defendants (Dkt. #1). On August 18, 2017, Deputy Langwell filed his Motion for Summary Judgment (Dkt. #30). Subsequently, Molina filed his response (Dkt. #37) on September 15, 2017. Deputy Langwell, on September 28, 2017, filed his reply (Dkt. #42), and on October 5, 2017, Molina filed his sur-reply (Dkt. #52).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court

"must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

Normally, the movant bears the initial burden of demonstrating the absence of a material fact issue. *Anderson*, 477 U.S. at 256. But a "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (internal quotation omitted). To satisfy this burden, the plaintiff must "identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). "Conclusory allegations and denials, speculation, improbable inference, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome immunity." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (citing *Reyes v. Hornbeck Offshore Servs., L.L.C.*, 383 F. App'x 442, 443–44 (5th Cir. 2010)). However, "where a factual dispute exist, [the Court] accept[s] the plaintiff's versions." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

## ANALYSIS

Deputy Langwell argues summary judgment is proper because he is entitled to qualified immunity. Further, Deputy Langwell claims Molina is prohibited from recovering punitive damages. The Court addresses each argument in turn.

### I. Qualified Immunity

"Qualified immunity provides government officials with immunity from suit insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cooper*, 844 F.3d at 522 (citations omitted). In

determining whether qualified immunity applies, the Court conducts a two-part test: "(1) whether the plaintiff has alleged a violation of an actual constitutional right; and (2) if so, whether the right was clearly established at the time of the violation." *Id.* "Both questions are matters of law." *Id.* (citing *Brothers v. Zoss*, 837 F.3d 513, 517 & n.8 (5th Cir. 2016)).

    **a. Violation of an Actual Constitutional Right**

Molina alleges Deputy Langwell violated his Fourth Amendment rights by applying excessive force. To prevail on an excessive-force claim, Molina must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id.* (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)).

Here, neither party disagrees that Molina suffered an injury. Instead, Deputy Langwell contends his application of force was objectively reasonable. As such, the Court must determine whether Deputy Langwell acted in an objectively reasonable manner in his application of force.

In excessive-force claims, the reasonableness of an officer's conduct depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Specifically, the Court takes into consideration three factors—the *Graham* Factors—which include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* As such, the Court's inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent

4

or motivation." *Cooper*, 844 F.3d at 522 (alterations in original) (quoting *Graham*, 490 U.S. at 397).

### i. Severity of the Crime

Deputy Langwell asserts case law in the Fifth Circuit clearly establishes that fleeing from a misdemeanor is a serious crime, which satisfies the first *Graham* factor. The Court disagrees.

Deputy Langwell cites to *Cooper v. Brown* to support his proposition. In *Cooper*, the Fifth Circuit, in addressing the first *Graham* factor, stated that "DUI [driving under the influence] is a serious offense . . . so that factor favors [Officer] Brown."[1] The Court finds such language does not equate to Deputy Langwell's broad assertion that Fifth Circuit case law clearly establishes that fleeing from a misdemeanor is a serious crime. Instead, the Court finds the Fifth Circuit's language defines driving under the influence as a serious offense, not the act of fleeing from a misdemeanor.

Focusing on the case at hand, the facts do not support the finding that the case involved a serious offense. On the night in question, neither Officer Flores nor Deputy Langwell witnessed Molina commit a crime. Instead, they pursued Molina only on the assumption that he broke into motor vehicles earlier that morning. In fact, upon Deputy Langwell's arrival on the scene, Officer Flores described Molina as a burglary of motor vehicle *suspect* (Dkt. #30, Exhibit 4 at p. 17). Because the Court limits its scope to the facts and circumstances that confronted the officers on the scene, the Court fails to find the existence of a criminal offense. Although Molina later admitted to breaking into two vehicles, such information is irrelevant for the Court's analysis since

---

[1] In describing driving under the influence as a serious crime, the Fifth Circuit cited to *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016). In *Brothers*, the Fifth Circuit held "driving while intoxicated and interfering with the duties of a public servant" are serious crimes. However, the Court's characterization did not include fleeing from such crimes.

those facts were unknown to the officers when they searched for and apprehended Molina.[2] As such, without the existence of a criminal offense, this factor favors Molina.

### ii. Immediate Threat to Safety of Officer or Others

Deputy Langwell claims Molina posed an immediate threat to the safety of the responding police officers. The Court is unpersuaded.

To support his argument, Deputy Langwell cites to *Edwards v. Shanley*, 666 F.3d 1289, 1295 (11th Cir. 2012). While case law from other circuits is persuasive, it is not binding. As such, the Court relies on Fifth Circuit precedent to guide its analysis.

In *Cooper*, Officer Pressgrove pulled over Cooper on suspicion of driving under the influence. *Cooper*, 844 F.3d at 521. After Officer Pressgrove administered a portable breath test, he returned to his patrol vehicle. *Id.* "Cooper panicked and fled on foot into a residential neighborhood" and hid inside a "small wood-fenced" area. *Id.* When Cooper fled, Officer Pressgrove did not know whether Cooper was armed. *Id.* In the Fifth's Circuit analysis addressing the second *Graham* factor, it found Cooper did not pose an immediate threat to the responding officers or others. *Id.* at 522–23. Specifically, the Fifth Circuit found that Cooper's fleeing the scene, while potentially intoxicated, into a nearby neighborhood did not present a situation where Cooper posed an immediate threat. *Id.* Further, although Officer Brown argued "the fact that Cooper was unsearched made Cooper more of a threat," the Fifth Circuit did not agree. *Id.* at 523 n.2. Instead, the Court held that "although this will sometimes be a relevant fact—for example, where a plaintiff is suspected of committing a violent crime—it is not enough, standing alone, to permit a reasonable officer to characterize a suspect as an immediate threat." *Id.*

---

[2] *See Calton v. City of Garland*, No. 3:02-CV-2215, 2004 WL 2965005, at *3 (N.D. Tex. Dec. 10, 2004) (holding the Defendants' argument that Plaintiff committed a severe crime of attempted murder misplaced since the officers were unaware of such facts when on the scene, but instead only knew that Plaintiff had committed a misdemeanor traffic offense).

Here, Molina ran into a neighborhood and hid under bushes in the front of a house when he noticed a police officer. Officer Flores did not know whether Molina was armed. Comparing these facts with *Cooper*, the Court finds a reasonable officer could not conclude that Molina posed an immediate threat to responding officers. As explained above, neither Officer Flores nor Deputy Langwell witnessed Molina commit a crime or had reason to believe he was armed. Further, Molina did not flee from a criminal scene or run away from a police officer who had detained him or pulled him over. Deputy Langwell points out the fact that Molina had a knife in his backpack and therefore was armed. However, Deputy Langwell makes this argument with the benefit of hindsight. Neither Officer Flores nor Deputy Langwell knew that Molina was in fact armed or had reason to believe so (Dkt. #37, Exhibit 2 at pp. 3–5; Dkt. #30, Exhibit 4 at p. 24). Moreover, the mere possibility that an individual, here a *suspect* of a non-violent crime, might be armed, standing alone, is insufficient "to permit a reasonable officer to characterize a suspect as an immediate threat." *See Cooper*, 844 F.3d at 532 n.2.

Taking into consideration the facts and circumstances surrounding the morning in question, the Court finds no reasonable officer could conclude that Molina posed an immediate threat to the responding officers. As such, this factor favors Molina.

### iii. Actively Resisting Arrest or Attempting to Evade Arrest by Flight

Deputy Langwell claims in running away and hiding, Molina actively attempted to evade arrest. The Court disagrees.

In making this argument, Deputy Langwell focuses on his inability to perceive Molina surrendering and his lack of knowledge on where Molina hid. However, according to Molina, as Officer Flores, Deputy Langwell, and Elo approached him he surrendered by rising up from the ground and stepping over the bushes. As Molina swung his leg over the bush, Molina claims Elo

7

attacked him, which resulted in both Molina and Elo tumbling down the front lawn. Once Elo took ahold of Molina, Molina claims he never tried to run away from, kick, punch, or yell at Elo. Instead, Molina asserts he screamed and begged for someone to release the dog from biting his leg (Dkt. #37, Exhibit 1 at p. 27). Instead of commanding Elo to release Molina's leg, Molina claims Deputy Langwell continued to pull Elo, which resulted in Elo pulling Molina's leg in addition to Elo shaking his head from side to side. In other words, Deputy Langwell pulled Elo, and Elo pulled Molina's leg. It "was just back and forth." (Dkt. #37, Exhibit 1 at p. 27).[3]

The parties dispute the length of time between Elo's biting and releasing Molina, but according to Molina approximately fifteen to thirty seconds passed. Deputy Langwell argues he acted reasonably because he "remove[d] [Elo] once it bec[a]me clear that the suspect no longer pose[d] an immediate threat of harm and [was] not actively resisting or evading arrest." (Dkt. #30 at p. 28). As explained above, Molina did not attempt to resist or evade arrest, but instead was in the process of surrendering. As such, the amount of time, whether fifteen seconds or thirty seconds, should have been avoided altogether. A surrendering suspect need not be exposed to a canine attack while attempting to surrender. Further, once Elo engaged Molina, Deputy Langwell failed to issue a verbal command for Elo to release. Instead, he continued to pull on Elo who, by virtue of having ahold of Molina's leg, pulled on Molina. Accordingly, the failure to immediately command a dog to release a surrendering criminal suspect who does not pose a threat is objectively unreasonable.[4]

---

[3] While the Court recognizes these facts are contested, "where factual disputes exist, [the Court] accept[s] the plaintiff's version." *Cooper*, 844 F.3d at 522.
[4] Even if Elo attacked of its own volition, Deputy Langwell permitted the attack to continue for fifteen to thirty seconds.

8

Based on these facts, the Court fails to find Molina actively resisted arrest or attempted to evade arrest by flight. Instead, Molina attempted to surrender and, in the process, suffered a dog attack. Accordingly, this factor favors Molina.

Therefore, because all three *Graham* factors weigh in favor of Molina, the Court finds Deputy Langwell's actions objectively unreasonable.[5]

### b. Clearly Established Right at the Time of the Violation

The second question the Court must address in the qualified immunity analysis is "whether the right was clearly established at the time of the violation." *Cooper*, 844 F.3d at 522. "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 524 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)). But "this does not mean that 'a case directly on point' is required." *Id.* (quoting *Morgan*, 659 F.3d at 372). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *Morgan*, 659 F.3d at 372 (emphasis in original)).

"The central concept is 'fair warning.'" *Id.* (citing *Morgan*, 659 F.3d at 372; *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). "The law can be clearly established despite notable factual distinctions between the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Newman*, 703 F.3d at 763). "Furthermore, 'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* (quoting *Newman*, 703 F.3d at 764).

---

[5] The Court makes such a determination resolving all doubts in favor of Molina.

9

Fifth Circuit case law clearly establishes that "once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.* "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]." *Id.* at 524–25 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (alteration in original)). In *Bush*, the Fifth Circuit held an officer who slammed an arrestee's face into a nearby vehicle while the arrestee was not resisting arrest or attempting to flee was objectively unreasonable. *Bush*, 513 F.3d at 502. Further, in *Newman*, the Fifth Circuit ruled tasing an unarmed arrestee who the police officers did not believe to be armed objectively unreasonable. *Newman*, 703 F.3d at 762.[6] Comparatively, in *Cooper*, the Fifth Circuit held the arresting officer acted objectively unreasonable when he allowed the canine to attack an arrestee who did not attempt to resist arrest or flee, and who the officer had no reason to believe posed an immediate threat. *Cooper*, 844 F.3d at 525.

Here, resolving all doubts in favor of Molina, Molina did not attempt to resist arrest or flee, but instead made an effort to surrender.[7] Moreover, Deputy Langwell did not have any reason to believe Molina, the suspect of a non-violent misdemeanor, posed an immediate threat. Accordingly, Deputy Langwell had "fair warning" that subjecting a suspect and non-threatening arrestee to a dog attack was objectively unreasonable. *See Id.* at n.8.

Therefore, the Court finds Molina's right was clearly established. Moreover, because both questions in the Court's qualified immunity analysis favor Molina, the Court finds Deputy Langwell is not entitled to qualified immunity.

---

[6] "The fact that *Bush* and *Newman* are not dog-bite cases does not shield [Deputy Langwell]. Lawfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive force and unreasonable force merely because their means of applying it are novel." *Cooper*, 844 F.3d at 525 (internal quotations omitted) (citations omitted).

[7] While the Court recognizes these facts are contested, "where factual disputes exist, [the Court] accept[s] the plaintiff's version." *Cooper*, 844 F.3d at 522.

## II. Punitive Damages

"A jury may award punitive damages in a § 1983 action when an official's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016) (internal quotations omitted) (citations omitted); *accord Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, the Court fails to find any evidence supporting the contention that Deputy Langwell acted with evil intent or reckless or callous indifference to Molina's constitutional rights. Further, Molina abandoned his claim for punitive damages when he failed to respond to Deputy Langwell's argument that the lack of evidence precludes such an award. As a result, the Court finds Molina's claim for punitive damages fails as a matter of law.

## CONCLUSION

It is therefore **ORDERED** that Defendant Deputy Langwell's Motion for Summary Judgment (Dkt. #30) is hereby **DENIED IN PART and GRANTED IN PART.**

Accordingly, the Court denies Deputy Langwell's motion as it relates to qualified immunity, but grants it as to Molina's claims for punitive damages.

**SIGNED this 14th day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE