# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GUILLERMO MURILLO MOLINA | § § | |
| v. | § § | Civil Action No. 4:17-CV-00017 |
| COLLIN COUNTY, TEXAS; ROBERT LANGWELL | § § § § | Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Collin County's Motion for Summary Judgment (Dkt. #31). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted.

## BACKGROUND

This is an excessive force case arising from a dog bite Plaintiff Guillermo Murillo Molina ("Molina") sustained from a Collin County police canine under the control of Deputy Robert Langwell ("Deputy Langwell"). As a result of the incident, Plaintiff alleges Defendants Collin County and Deputy Langwell violated 42 U.S.C. § 1983, and Defendant Collin County violated the Texas Tort Claims Act.

On January 6, 2015, at approximately 2:30 a.m., Molina and an alleged accomplice were walking in a neighborhood when a police officer, Officer Juan Flores ("Officer Flores"), flashed his lights. Upon seeing the officer, Molina and the accomplice ran. While the accomplice continued to run, Molina hid under bushes outside a nearby house. As a result of the two individuals' running, Officer Flores called for backup. Subsequently, Deputy Langwell and his police canine Elo arrived on the scene. Upon arriving, Officer Flores, Deputy Langwell, and Elo started searching for Molina. As they approached Molina's hiding spot the bite apprehension

occurred. It is at this point the stories deviate. Deputy Langwell contends Elo bit Molina as he lay motionless, facedown, and beneath the bushes. Conversely, Molina claims after he heard the dog nearby he decided to surrender and started to stand up and climb over the bush he used to hide himself. Molina alleges that as he swung his leg over the bush Elo attacked him, biting him and thrashing about with Molina's leg in his mouth. In the course of Elo's biting of Molina, the two tumbled down the incline of the lawn. Molina asserts that although Deputy Langwell pulled Elo's leash, he never issued any commands to Elo or made any other efforts to remove Elo from Molina's leg. According to Molina, Elo maintained his bite for approximately fifteen to thirty seconds before finally releasing Molina.

As a result of the underlying facts, on January 6, 2017, Molina initiated this suit against Defendants (Dkt. #1). On August 18, 2017, Collin County filed its Motion for Summary Judgment (Dkt. #31). Subsequently, Molina filed his response (Dkt. #38) on September 15, 2017, and Collin County, on September 28, 2017, filed its reply (Dkt. #43).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

ANALYSIS

Collin County argues summary judgment is proper because: (1) there is no constitutionally deficient policy, practice, or custom of Collin County that caused the purported violation of any of Molina's secured rights; (2) Deputy Langwell is entitled to qualified immunity, which makes Collin County equally immune; (3) Molina failed to provide Collin County with the appropriate notice of its state law claims; (4) punitive damages are not recoverable against Collin County under either Federal or State law; and (5) medical expenses or medical costs are not recoverable because Molina did not incur any. The Court addresses each argument in turn.

I. **Constitutionally Deficient Policy, Practice, or Custom**

In averring that Molina's federal claims fail as a matter of law, Collin County makes four different arguments. Specifically, Collin County claims: (a) it is not vicariously liable for the purported unconstitutional acts committed by its employees; (b) that it did not fail to adequately supervise or train its officers; (c) that compliance with the Texas Commission on Law Enforcement ("TCOLE") bars Molina's failure to train claim; and (d) that Collin County did not act with deliberate indifference in training its employees. The Court addresses each argument in turn.

"Section 1983 provides for liability to be imposed upon any person who, acting under the color of state law, deprives another of rights or privileges secured by the Constitution. It is well settled that local government units are 'persons' within the meaning of this statute." *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989). "To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "The

4

official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (citing *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)). While an "official policy" can arise in various forms, "[i]t usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 579). "Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation." *Id.* (citation omitted). "In other words, a plaintiff must show direct causation, i.e., that there was a 'direct causal link' between the policy and the violation." *Id.*

### a. Vicarious Liability

Collin County claims the law prohibits vicarious liability under 42 U.S.C. § 1983 for the purported unconstitutional acts committed by its employees. Molina states that he "is not seeking to hold Defendant vicariously liable. Rather, Defendant is liable for its own actions and inaction and the customs and policies it maintained." (Dkt. #38 at p. 19).

"Municipalities are not liable for the unconstitutional actions of their employees under respondeat superior." *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Instead, to establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).

5

While Collin County's argument that vicarious liability does not apply in this case is correct, the Court finds it is misplaced. As explained above, Molina is not seeking to hold Collin County liable under this theory.

### b. Adequate Training and Supervision

Collin County asserts that Molina's claim that it failed to adequately supervise and train its officers fails as a matter of law. Conversely, Molina contends obtaining summary judgment on this issue is an impossible task because his experts create issues of fact by testifying that "there is essentially no supervision of the canine unit by the department, inadequate guidance is provided on the use of force in canine deployment, and deputies are provided limitless discretion in deploying canine units to search and apprehend suspects." (Dkt. #38 at p. 19). The Court addresses the alleged inadequate training and supervision issues separately.

### i. Alleged Inadequate Training

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Pineda v. City of Houston*, 291 F.3d 325, 331 (5th Cir. 2002) (citations omitted). As such, "[t]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (citations omitted). "[T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* Thus, a plaintiff must show that "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Id.*

### 1. Adequacy of Training Policy or Procedure

To show Collin County's alleged inadequate training, Molina presented expert testimony stating, "the Collin County Sheriff's Office policy on Canine Purpose and Procedure [("the Canine Policy")] . . . is inadequate because it fails to identify specific circumstances under which canine deployment is proper. It also fails to identify specific prohibitions against canine deployment." (Dkt. #38, Exhibit 8 at p. 11).[1] Specifically, Molina claims the absence of "restrictions for deployment [of] the canine against a non-violent subject who is passively hiding" constitutes "a serious shortcoming in the establishment of the policy." (Dkt. #38, Exhibit 8 at p. 10).

The Court finds that Molina failed to create fact issues on the adequacy of Collin County's training of its officers. Here, the Canine Policy states that a "Canine Unit's purpose is to provide trained canine elements to assist in the prevention and detection of crime; to track and trail persons . . . to search buildings; to provide investigative aid to the officer on the street; and to perform other duties as may be directed. . . ." (Dkt. #31, Exhibit 5 at p. 1). Further, the policy makes clear that "the use of a canine in making or maintaining an arrest is authorized when the circumstances justify such use," and "that the use of a canine" under such circumstances "constitutes the use of force or an implied threat of force." (Dkt. #31, Exhibit 5 at p. 1). Thus, Molina's argument that Collin County failed to provide circumstances that warrant the use of canine force is misplaced. Further, Molina's contention that the Canine Policy's failure to include a restriction of deployment for the exact facts of this case constitutes a shortcoming is contradictory to Fifth Circuit precedent. In *City of Canton*, the Fifth Circuit stated that

> [n]either will it suffice to prove that an injury or accident could have been avoided if an officer had [ ] better or more training, sufficient to equip him to avoid the

---

[1] *See also* (Dkt. #38, Exhibit 4 at p. 20) (stating "I [Ernest Burwell] have never seen a canine policy or canine deployment policy that did not include adequate guidance and instructions regarding the use of canines for the handlers to follow. The Collin County Sheriff's Department canine policy is overly broad, [contains] vague language, [is] out of date, and allows the canine handlers too much discretion regarding deployment decisions.").

> particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton v. Harris*, 489 U.S. 378, 391 (1989). As such, Molina's assertion that the Canine Policy's omission of a restriction addressing the exact facts of this case is insufficient to raise an issue of fact on the adequacy of Collin County's training of its officers.

Additionally, the facts of this case stand in marked contrast to Fifth Circuit and United States Supreme Court precedent involving instances of inadequate training. *See City of Canton v. Harris*, 489 U.S. at 390; *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). In *City of Canton*, "the officer had received rudimentary first-aid training, but allegedly not enough to recognize a detainee's serious illness." *Pineda*, 291 F.3d at 333. Further, in *Bryan County*, the deputy responsible for plaintiff's injury received *no* training in proper pursuit and arrest techniques. Here, Molina failed to provide evidence that Collin County's officer training illustrated the blatant deficiencies as described in *City of Canton* and *Bryan County*. As such, the Court finds Molina's claim that Collin County failed to properly train its officers fails as a matter of law.

### ii. Alleged Inadequate Supervision

Molina additionally claims that Collin County failed to adequately supervise its officers. Specifically, Molina points to other incidents where Elo, while under the supervision of Deputy Langwell, apprehended and bit other suspects as examples of Collin County's failure to supervise its officers. Further, Molina asserts that Collin County failed to supervise its officers because the department "allows the handler to go into other police department jurisdictions without supervision

8

or any pre[-]approval to conduct canine searches," and fails to "conduct post bite interviews." (Dkt. #38, Exhibit 4 at p. 31).

In order for Collin County "to be liable for failure to supervise, it at least must have been obvious that 'the highly predictable consequence' of not supervising its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 850 (alterations in original) (citations omitted).

The Court finds Molina's claims troubling for several reasons. First, although it is uncontroverted that Elo, on other incidents, bit other suspects, Molina fails to provide any evidence that such situations involved excessive force or unlawful actions. Second, while Molina claims no pre-approval is required to conduct canine searches, this is incorrect. Sections 260.100(d)–(e) of the Canine Policy list procedures for when a canine is requested by Collin County Sheriff's Office Officers and by Non Collin County Sheriff's Office Officers (Dkt. #31, Exhibit 5 at p. 3–4). Finally, Section 260.100(f) provides that "[a]nytime the canine unit is called out, a written report will be submitted to the Captain within two [ ](2) working days." (Dkt. #31, Exhibit 5 at p. 4). Not only does this provision contradict Molina's argument that such procedures do not exist, but Deputy Langwell complied with this procedure when he filed a Use of Force Report (Dkt. #38, Exhibit 14).

As such, the Court finds Molina failed to provide evidentiary support of inadequate supervision. *See Peterson*, 588 F.3d at 850. Accordingly, the Court finds Molina's claim that Collin County failed to adequately supervise its officers fails as a matter of law.

### iii. Official Policy

Indirectly, Molina makes the argument that past incidents involving Deputy Langwell and Elo exhibit a pattern of excessive force. As such, the Court addresses whether such incidents

illustrate that Collin County "maintained an official policy that was permissive of excessive force." *Id.*

As explained earlier, Molina must provide evidence to support that an official policy of Collin County constituted the moving force behind the alleged excessive force that violated his Fourth Amendment rights. *James*, 577 F.3d at 617. Molina points to three incidents where Elo, while under the supervision of Deputy Langwell, bit several suspects.[2] (Dkt. #38, Exhibit 6 at pp. 28–29). As such, the Court must determine whether these incidents "are sufficient to establish a pattern of excessive force that can be said to represent official policy." *Peterson*, 588 F.3d at 850.

"A pattern is tantamount official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 851 (citations omitted). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* at 850–51 (citing *Piotrowski*, 237 F.3d at 582). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* at 851 (citations omitted).

Here, the Court finds the three incidents Molina relies on are insufficient to support a pattern of excessive force for two reasons. First, although Molina lists these incidents as an illustration that Elo bit other suspects, Molina fails to prove that such incidents involved excessive force or unlawful conduct. Second, Fifth Circuit precedent supports the proposition that three

---

[2] Of the three incidents, one took place after the incident involving Molina.

events is insufficient to support a pattern of unconstitutional acts. *See Peterson*, 588 F.3d at 850–852 (holding twenty-seven incidents of excessive force did not suggest an unconstitutional pattern of excessive force); *Pineda*, 291 F.3d at 329–31 (finding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry).

As such, the Court finds Molina's claim that Collin County maintained an official policy permissive of excessive force fails as a matter of law. Because the Court finds Molina's § 1983 claim fails as a matter of law, it is unnecessary to discuss Collin County's remaining arguments on this issue.

## II. Deputy Langwell Qualified Immunity

Collin County argues that Deputy Langwell's entitlement to qualified immunity means Collin County is also entitled to immunity from Molina's federal and state claims. Because the Court finds Molina's federal claims fail as a matter of law, the Court only addresses whether Collin County is entitled to immunity from Molina's state law claims.

As discussed in the Court's Memorandum Opinion and Order (Dkt. #58), Deputy Langwell is not entitled to qualified immunity. As such, the Court finds Collin County's argument that it is entitled to such immunity inapposite.

## III. Notice for State Law Claims

Collin County claims Molina cannot prevail on his state claims due to Molina's failure to give the appropriate notice. Conversely, Molina argues that although he failed to provide written notice, such notice is not required when "the governmental unit has actual notice," which Molina contends is the case here.

Section 101.101 requires a plaintiff give a governmental entity notice of a claim against it "not later than six months after the day that the incident giving rise to the claim occurred." TEX.

CIV. PRAC. & REM. CODE ANN. § 101.101(a). If the plaintiff does not provide a formal, written notice, then the plaintiff must prove that the governmental entity had actual notice "that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c). "[G]overnmental entities have actual notice when they have knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (quoting *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).

Clarifying the second requirement, the Texas Supreme Court stated that the "governmental unit [must] have knowledge that amounts to the same notice to which it is entitled by section 101.101(a). That includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004). "It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault." *Id.* at 347–48. Further, "[f]ault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez-Anrancibia*, 324 S.W.3d 544, 550 (Tex. 2010). "The purpose of the notice requirement is 'to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.'" *Id.* (quoting *Cathey*, 900 S.W.2d at 341). "[A]ctual notice is a fact question when the evidence is disputed." *Simons*, 140 S.W.3d at 348. However, "actual notice can be determined as a matter of law." *Id.*

Both parties agree that Molina failed to provide Collin County with formal written notice of his claims. However, Molina claims Collin County had actual notice of such claims. In making this argument, Molina relies on the Use of Force Report (Dkt. #38, Exhibit 14), the Incident Report (Dkt. #38, Exhibit 3), and the Court's Order granting Molina's Motion for Leave of Court to File First Amended Complaint (Dkt. #21). The Court finds this evidence fails to establish actual notice.

Regarding the Use of Force Report (Dkt. #38, Exhibit 14) and the Incident Report (Dkt. #38, Exhibit 3), these reports fail to provide subjective awareness of fault because they did not imply, or expressly state, Collin County's alleged fault. Instead, the Use of Force Report merely identifies Molina as the individual who suffered a "minor injury" as the result of a "K9 Bite." (Dkt. #38, Exhibit 14). Further, the Incident Report provides Officer Flores's narrative of what occurred on the morning in question. (Dkt. #38, Exhibit 3). Specifically, the report, in pertinent part, states that "K9 Elo located a subject, later identified as Guillermo Molina hiding behind a bush at the front of the residence. K9 Elo apprehended Molina by the leg. Molina began resisting K9 Elo and was bitten on his right leg. I [Officer Flores] handcuffed Molina, and asked dispatch to send paramedics to the location for a dog bite." (Dkt. #38, Exhibit 3 at p. 7). Nowhere in these reports is there evidence that Deputy Langwell acted improperly, negligently, or with excessive force. Instead, the reports list factual statements describing what happened on the morning in question. As such, the reports fail to raise a fact question on whether Collin County had actual notice.[3]

Molina claims because Deputy Langwell "was present and actively participated in the incident, and produced reports of [his] involvement," subjective awareness is present. The Court

---

[3] The Court is not alone in finding police reports fail to provide actual notice. *See Carbajal*, 324 S.W.3d at 538–39; *Rojas v. Cty. of El Paso*, 408 S.W.3d 535, 541–42 (Tex. App.–El Paso 2013, no pet.); *City of San Antonio v. Herrera*, No. 04-13-00304-CV, 2013 WL 5653311, at *4 (Tex. App.–San Antonio Oct. 16, 2013, pet. filed) (mem. op.).

13

is unpersuaded. Although the Texas Supreme Court suggested that actual notice is established "when the sole instrumentality of harm is the government itself," *Arancibia*, 324 S.W.3d at 550, the facts of this case fail to reach this result. In *Arancibia*, "the government concede[d] that its surgical error perforated Arancibia's intestine, resulting in sepsis, multiple organ failure, and death." *Id.* Further, in *Ortiz-Guevara*, the accident "report [did] even more than imply Officer Monroe's fault—it expressly assign[ed] fault to him." *Ortiz-Guevara v. City of Houston*, No. 14-13-00384-CV, 2014 WL 1618371, at *3 (Tex. App.–Houston [14th Dist.] Apr. 22, 2014, no pet.). Here, as explained above, the reports failed to expressly or impliedly assign fault to Deputy Langwell. Instead, the reports merely recited the facts of the morning in question. As such, the Court finds that although reports are sometimes sufficient to establish actual notice, this case does not support such a finding.

Finally, Molina relies on the Court's Order granting Molina leave to file his first amended complaint (Dkt. #21). In contesting the Motion for Leave, Collin County made the same argument that it does here—that Molina failed to provide it with the necessary notice. In granting leave, the Court stated that "Plaintiff has alleged a plausible set of facts to support a theory of actual notice." (Dkt. #21 at p. 3). In making its finding, the Court applied a 12(b)(6) plausibility standard. Here, the Court, applying a summary judgment standard, finds that Molina failed to provide sufficient evidence to create a genuine issue of material fact as to whether Collin County had actual notice. As a result, the Court finds Molina's reliance on the Court's past order (Dkt. #21) misplaced.

As such, the Court finds that Collin County did not have actual notice as required by Section 101.101. Accordingly, because Molina failed to provide the appropriate notice, Molina's state law claims fail as a matter of law.

Because the Court finds that Molina's federal and state law claims fail as a matter of law, it is unnecessary to address Collin County's arguments relating to punitive damages and medical bills/expenses.

**CONCLUSION**

It is therefore **ORDERED** that Defendant Collin County's Motion for Summary Judgment (Dkt. #31) is hereby **GRANTED**.

Accordingly, Molina's federal and state law claims against Collin County are **DISMISSED WITH PREJUDICE**, and Collin County is dismissed from this lawsuit.

**SIGNED this 21st day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE